OPINION OF THE COURT
Daniel P. Conviser, J.
The defendant moves to be resentenced pursuant to the Drug Law Reform Act of 2009 (2009 DLRA) (L 2009, ch 56, part AAA, § 9, codified at CPL 440.46). That motion is opposed by the People. For the reasons stated below, defendant’s motion is granted and the defendant is offered a new determinate *753 sentence of three years in prison followed by two years of post-release supervision.[1]
Statement of Facts
Defendant was convicted of criminal sale of a controlled substance in the third degree and on November 19, 2002 given an indeterminate sentence of imprisonment with a term of 2 to 6 years. The People assert that the defendant engaged in the sale of $350 of cocaine to an undercover police officer on two occasions in May of 2002 and that on a latter date cocaine and drug paraphernalia were recovered from the apartment where the sales took place. In addition to the instant offense, defendant was convicted of criminal possession of a controlled substance in the seventh degree and sentenced to time served in 2002, convicted of invalid use of a credit card with intent to defraud and sentenced to time served in 1999 and convicted of criminal trespass in the second degree and sentenced to four days in jail in 1998.
The defendant was initially released to parole supervision on the instant offense on July 17, 2003. Parole violation warrants were issued for the defendant on October 23, 2003, June 8, 2007 and June 18, 2008. In these warrants, it was alleged that the defendant had used cocaine and marijuana, failed to report to his parole officer on multiple occasions, left his approved residence and failed to attend two programs required by the Division of Parole. On August 22, 2008, the defendant was reincarcerated for a parole violation and continued to be in prison at the time the instant motion was filed. Defendant has been punished for one disciplinary infraction while in prison. That was a tier III infraction on December 26, 2008 for violent conduct, fighting and disorderly conduct for which he received 30 days of keeplock time.
While incarcerated, defendant successfully completed the Willard drug treatment program and the shock incarceration program. He entered the alcohol and substance abuse treatment program in March of 2009 and continues to participate in the program, where he has received a number of positive reviews. He has received training or done work in a number of vocational areas and increased his grade levels in math and reading. Prior to prison, Mr. Figueroa served for eight years in the National *754 Guard. Defendant asserts that he would be able to count on the support of his wife if he were released. His wife, Tisha Taylor, has also written a letter supporting defendant’s release. Mr. Figueroa also has children. Defendant’s counsel, the Office of the Appellate Defender, asserts that it would assist in defendant’s reintegration through its social work unit if he were released.
Conclusions of Law
The 2009 DLRA, inter alia, allows certain convicted class B felony drug offenders serving indeterminate sentences imposed prior to January 13, 2005 to be resentenced to new determinate terms under the new determinate sentencing ranges created by the statute.[2] The statute first requires a court to determine whether a defendant is eligible for resentencing. In this case, the parties disagree about whether the defendant is statutorily eligible for resentencing in one respect. The People argue that the defendant is ineligible for resentencing because he is currently incarcerated only by virtue of a parole violation. The defendant contends that this fact does not bar resentencing.
The People’s argument is both a jurisdictional one (that no defendant who is incarcerated for a parole violation is eligible for resentencing) and also an argument that, even if the defendant is eligible for resentencing, defendant’s parole violations indicate that substantial justice dictates the denial of defendant’s motion. The People’s jurisdictional argument is one which numerous courts are currently grappling with in other cases. The court has conducted a detailed analysis of the issue immediately infra. For the reasons stated below, this court holds that a defendant who is returned to prison after violating the provisions of his parole is not, by virtue of that fact, barred from resentencing eligibility under the 2009 DLRA.[3]
*755 Defendant’s Parole Violations as a Possible Jurisdictional Bar to Resentencing under the 2009 DLRA
People v Mills and the 2005 DLRA
The 2009 DLRA requires that the defendant be “in the custody of the department of correctional services” to be eligible for resentencing. (CPL 440.46 [1].) The People argue that because the defendant is in custody solely by virtue of his own actions in violating parole, he should not benefit by receiving a resentence. In support of this argument, the People rely on People v Mills (11 NY3d 527 [2008]) and People v Rodriguez (68 AD3d 676 [1st Dept 2009]).
Mills involved an application for resentencing by two offenders (Mills and Then) under the 2005 DLRA. In Mills the Court held that the plain meaning of the 2005 DLRA required that in order to be eligible for resentencing, a defendant could not be eligible for parole within three years of a resentencing application. The People’s argument in the instant matter concerns the Court’s holding with respect to the second named defendant, Jose Then. Then was originally convicted of a class A-II felony in 1999, given a five years to life indeterminate sentence and subsequently released on parole. Two months after release, in 2002, he again committed a class A-II felony for which he was sentenced to a six years to life term. Then moved for resentencing under the 2005 DLRA for his 1999 conviction, since, given the revocation of his parole, he was now more than three years away from parole eligibility. The Court of Appeals acknowledged that Then was eligible for resentencing under the literal terms of the statute. It held, however, that he was nevertheless barred from resentencing.
To allow resentencing, the Court held, would create “illogical, if not perverse, results” (11 NY3d at 537). It noted that if Then had not committed a new crime, he would be ineligible to have his lifetime maximum sentence modified on resentencing, since he would not have been in correctional custody. The Court reasoned that “[s]urely the Legislature did not intend fresh crimes to trigger resentencing opportunities.” (11 NY3d at 537.) The Court therefore held that “once a defendant has been released to parole supervision for a class A-II drug felony conviction, he or she no longer qualifies for 2005 DLRA relief for that particular conviction.” (Id.)
Mills did not base its holding on any statutory language or legislative history relevant to the 2005 DLRA. Rather, the Court held that its construction of the statute was the most sensible one because it concluded that the Legislature could not possibly *756 have intended a different result. (See also People v Bustamante, 62 AD3d 1209 [3d Dept 2009], lv dismissed 13 NY3d 742 [2009]; People v Rodriguez, 61 AD3d 1004 [2d Dept 2009], lv dismissed 12 NY3d 920 [2009] [both applying the Mills “fresh crimes” rule to bar resentencing under the 2005 DLRA].) The holding in Mills applied the well-settled rule that a statutory interpretation which is “contrary to the dictates of reason or leads to unreasonable results is presumed to be against the legislative intent” regardless of the language of a statute or any evidence that the Legislature actually intended the result reached by a court. (McKinney’s Cons Laws of NY, Book 1, Statutes § 143, Comment [2009].)
Mills, in the court’s view, announced a much broader exclusion rule than the Court might have chosen to adopt based on the rationales for the decision and the position of the defendant Jose Then. The essential rationale for the rule articulated by the Court was that the Legislature could not possibly have intended “fresh crimes” to trigger resentencing opportunities. The holding of the decision, however, could be much more broadly construed. The literal language of the holding would appear to encompass not only new crimes but also technical parole violations. “We therefore hold that once a defendant has been released to parole supervision for a class A-II drug felony conviction, he or she no longer qualifies for 2005 DLRA relief for that particular conviction.” (11 NY3d at 537; see also People v Hardy, 49 AD3d 779, 779-780 [2d Dept 2008], lv dismissed 10 NY3d 935 [2008]; People v McCloud, 38 AD3d 1056, 1057 [3d Dept 2007], lv dismissed 8 NY3d 947 [2007]; People v Hernandez, 46 AD3d 1425, 1426 [4th Dept 2007], lv dismissed 9 NY3d 1034 [2008],)[4]
The second way in which the decision swept broadly had to do with the position defendant Then was in when he applied for *757 resentencing. Then, in the view of this court, was plainly ineligible for resentencing under the 2005 DLRA when he moved to be resentenced regardless of whether he committed a new crime. That is because under the 2005 DLRA, once Then was reincarcerated for a parole violation and given a time assessment on his original sentence of less than three years, he could never again be within three years of parole eligibility for that particular crime.
An offender who is denied parole and remains incarcerated is automatically eligible for parole within two years. (Executive Law § 259-i [2] [a].) Thus, an offender denied parole who remains incarcerated can never be eligible for resentencing under the 2005 DLRA because only offenders who are more than three years away from parole eligibility qualify for resentencing. (People v Smith, 45 AD3d 1478, 1479-1480 [4th Dept 2007].) As the Mills court explained, an offender who is reincarcerated for a parole violation, as Then was, is given a “time assessment,” which is a period of time after which the offender will again be eligible for parole. (11 NY3d at 532 n 2.) In Then’s case, this time assessment was 5 months and 26 days. Then was not eligible for resentencing with respect to his initial conviction when he was initially reincarcerated because his time assessment meant he was not more than three years away from parole eligibility when he returned to prison. He could also never again be eligible for resentencing under the 2005 DLRA with respect to his first conviction because, with respect to that initial conviction, he would be eligible for parole at least every two years.
The only argument that Jose Then was eligible for resentencing arose because his second conviction (for which he received a six years to life sentence) meant that he would not be eligible to be actually released on parole for more than three years. That is, it was the length of Jose Then’s sentence which made him arguably eligible for resentencing — not the fact that he had committed another crime and been returned to prison. Had Then been convicted of failing to pay his fare on the subway and been given a 90-day jail sentence and a one-year time assessment, there would be no argument that he was eligible to be resentenced because he would never again be within three years of parole eligibility.
*758 The Mills court could have chosen to construe the 2005 DLRA as mandating that a defendant’s parole eligibility date would always be calculated only with respect to the conviction for which he was applying to be resentenced. That would mean that Then, or any other offender who was given a time assessment of three years or less upon a parole violation, would be permanently barred from resentencing under the 2005 DLRA. Indeed, at one point in its decision the Court seemed to adopt that rationale for its holding asserting that “[a] valid and more sensible reading of the statutory text is that in order to be eligible for resentencing, an inmate must be more than three years from parole eligibility for the same class A-II drug felony for which resentencing is sought.” {Id. at 537.)
If the Mills court had chosen to adopt a rule based only on that concern, the resulting rule would likely have had little or no effect on resentencing eligibility under the 2004 and 2009 DLRA. Neither of those statutes require that an offender be more than three years away from parole eligibility to be resentenced. They simply require that an offender be in Department of Correctional Services’ (DOCS) custody. Were the rule created by the Mills court simply that an offender’s eligibility for resentencing would have to be judged solely with respect to his or her original sentence, then any offender returned to prison for the commission of a new crime or a technical parole violation who was given a time assessment would continue to be eligible for resentencing pursuant to that time assessment under the 2004 and 2009 DLRA.
Mills went further, however, by holding that a defendant’s ineligibility for resentencing, by virtue of being released on parole at any historical point in time, would serve to preclude a defendant from resentencing at any time in the future, even if, in the future, that defendant became eligible for resentencing under the literal terms of the statute with respect to an initial conviction. Thus, the Court held that the test to be applied was not whether the defendant, with respect to the conviction for which he was applying to be resentenced, was more than three years away from parole eligibility. The test was whether the defendant had at any time in the past been within three years of parole eligibility for that crime.
It is not clear what practical impact the Mills rule has had on the resentencing of class A-II felony drug offenders. That is because of the three-year parole eligibility rule. Mills, when contrasted with a rule which would consider resentencing *759 eligibility only with respect to a defendant’s initial conviction, would only affect a class A-II felony drug offender who violated his or her parole, was given a time assessment of more than three years and then applied for resentencing. If resentencing eligibility under the 2005 DLRA was judged only with respect to the conviction a defendant applied to be resentenced for, offenders who received time assessments of less than three years would never be eligible for resentencing regardless of the “fresh crimes” rule.
In sum, the Mills court announced a rule which was broader than it might have chosen to adopt given the “fresh crimes” rationale for its decision. The Court also announced a rule which was broader than necessary to deny resentencing to Jose Then. But the decision also, to a large extent, covered offenders who were ineligible for resentencing in any event. The more significant practical effect of Mills would occur if its underlying rationales were applied to drug law resentencing enactments which do not include the three-year eligibility bar. That was the issue before the First Department in Rodriguez (with respect to the 2004 DLRA) and which is before this and numerous other trial courts now under the 2009 DLRA.
Expansion of the Mills Rule to the 2004 DLRA: People v Rodriguez
The Rodriguez court, in a brief opinion, expanded the Mills rule to resentencing proceedings under the 2004 DLRA, which, inter alia, authorized resentencing for class A-I felony drug offenders. The Rodriguez court cited Mills but primarily relied upon the trial court’s decision in People v Bagby (11 Misc 3d 882 [Sup Ct, Westchester County 2006, Bellantoni, J.]). Although a trial court decision, Bagby has been cited repeatedly to justify the denial of resentencing motions under the 2005 DLRA and, more recently, the 2009 DLRA, and has assumed great significance in the developing jurisprudence concerning the scope of resentencing under the Legislature’s drug law reform enactments. (See McCloud, supra-, Hernandez, supra; People v Smith, 45 AD3d 1478 [2007]; People v Roman, 12 Misc 3d 1197[A], 2006 NY Slip Op 51607[U] [Sup Ct, NY County 2006]; People v Cuebas, 12 Misc 3d 987 [Sup Ct, Kings County 2006], affd 47 AD3d 828 [2d Dept 2008]; People v Banks, Sup Ct, NY County, Jan. 26, 2010, McLaughlin, J., index No. 7170/95 [construing the 2009 DLRA].) Because Bagby will likely continue to be reviewed by courts considering the scope of resentencing under the 2009 DLRA, it deserves careful analysis.

*760
People v Bagby

In Bagby, the defendant was initially convicted of a class A-I felony drug offense in 1979. His 15 years to life sentence for that conviction was subsequently commuted by the Governor to an 873 years to life term. He was released from prison in 1989, was arrested for a technical parole violation in 2005 and received a 90-day time assessment to be served at the Willard Drug Treatment Campus. While at Willard, he applied to be resentenced under the 2004 DLRA.
In rejecting defendant’s resentencing motion, the Bagby court applied the Mills rule to the 2004 DLRA. In doing so, the court held that allowing parole violators to apply for resentencing would “result in parolees intentionally violating their parole so that they may reap the benefits of the new sentencing scheme . . . Clearly, the Legislature did not intend to foster lawlessness when it enacted the Rockefeller Drug Law Reform Act.” (11 Misc 3d at 887.)
The Mills court did not find that the Legislature had any conscious intention to exclude parole violators from the 2005 DLRA. The Court instead held that any such result would be irrational and could thus not be imputed to the Legislature. In Bagby, however, the court concluded that the Legislature, in enacting the 2004 DLRA, consciously intended to exclude parole violators from the statute. The court reached this conclusion largely by relying upon two estimates of the number of offenders who would be impacted by the law. The first estimate was contained in the Assembly Memorandum in Support of the act. This memorandum noted that “[t]his reform [allowing resentencing for class A-I felony drug offenders] would affect roughly 400 inmates.” {Id. at 888.) The second estimate was contained in a memorandum written by a criminal defense attorney employed by the New York State Defenders Association. This memorandum noted that the reform would affect “approximately 450 inmates.” {Id.) From these two numbers, the court concluded that the Legislature, in enacting the 2004 DLRA, intended to exclude any offender who had committed a parole violation from resentencing eligibility:
“There is no doubt that the number of those on lifetime parole for A-I drug offenses in New York State far exceeds 450, the projected number of those convicts who stand to benefit from the resentencing provision of the new law. It is beyond dispute that the New York State Division of Parole supervises *761 tens of thousands of parolees. Surely those who are on parole for drug offenses comprise a large portion of the thousands who are supervised by the New York State Division of Parole. Since the Legislature envisioned that the Rockefeller Drug Law Reform Act would be applicable only to approximately 400 inmates, logic dictates that the Rockefeller Drug Law Reform Act does not apply to parolees who have been incarcerated for a parole violation, since the number of parolees supervised in New York State far exceeds 400. The fact that the Legislature intended the law to apply to approximately 400 inmates leads this court to conclude that the Drug Law Reform Act does not apply to the thousands of parolees who have been released from prison, who are on parole, and whose parole may or may not be violated.” (Id. at 888-889.)
The Bagby court obviously conducted a thoughtful analysis of the 2004 DLRA. Its holding can be usefully broken down into three components. First, the court simply applied the Mills rule to the 2004 DLRA, a statute which, while not identical to the 2005 act, obviously shares a number of relevant characteristics with it. But, with respect to the 2004 DLRA, the court also expanded the underlying rationale of Mills in two respects. First, the court held that, not only would allowing resentencing for class A-I felony drug offenders be illogical or perverse (as the Mills court held) — it would actually create a practical incentive to violate parole. Second, the Bagby court held that, not only should the Mills rule apply because to do otherwise would create unreasonable results but that, with respect to the 2004 DLRA, the Legislature consciously intended that parole violators be excluded from the statute.
This court does not take issue with the fact that the Bagby court simply applied the Mills rule to the 2004 DLRA or that the First Department (whose Rodriguez holding is obviously binding on this court) reached the same conclusion. But this court does respectfully disagree with the reasoning behind the two additional conclusions the Bagby court reached. This court does not believe there is a persuasive argument that allowing parole violators under the 2004 DLRA to apply for resentencing would create a practical incentive to violate the law. This court also does not believe there is any evidence that the Legislature intended to exclude such offenders from the statute.
*762 The “Fostering Lawlessness” Rationale for Resentencing Denial under the 2004 DLRA
The 2004 DLRA authorized resentencing for class A-I felony drug offenders. But the act also mandated that any class A-I felony drug offender on parole would have his or her lifetime maximum sentence terminated after three years of unrevoked parole supervision.[5] An offender who is returned to prison and then resentenced under the 2004 DLRA, however, regardless of the sentence they receive, must receive a period of postrelease supervision (PRS) with a term of five years. (Penal Law § 70.45.) That is, such offenders, by definition, may always be required to serve a longer parole term upon resentencing than the parole term they would be required to serve by simply not having their parole revoked for three years.
The purported incentive implicit in the Bagby holding is that an A-I felony drug offender would, were resentencing allowed after a parole violation, pursue the following strategy. First, commit a new crime or parole violation that the offender would otherwise not have committed for the purpose of going back to state prison. This period of incarceration would include any new sentence for the offender’s new crime as well as any time assessment for the offender’s parole violation. There would obviously be no way to predict how many months or years such a new sentence would equal.
The second part of the strategy would involve applying for resentencing. But it would again be impossible to predict whether such a motion would be granted. Third, the offender would have to hope that if resentencing were granted, it would result in a relatively prompt release rather than an offered resentence which required the offender to. serve additional jail or prison time. Assuming every possible positive contingency occurred, the offender could eventually hope to be in the same position with respect to his liberty (that is,'not in prison) that he was in before his violation.
Assuming all of these positive results occurred, however, the offender might still be in an arguably worse position with respect to his parole supervision than he was before his parole was violated. This hypothetical offender would now be required to serve a five-year postrelease supervision term, after serving additional time in prison, rather than being on parole which would have to be terminated in less than three years, assuming *763 that parole was not revoked. It is possible that a court might order a sentence reduction which, when combined with the five-year PRS term, might result in the effective end of an offender’s supervisory period in less than three years. But, as with every other possible result in the process, that would be plainly impossible to predict. It is difficult to understand why, in the real world, offenders would find committing a new crime under this scenario to be a rational choice or one which would be likely to provide them with a benefit. The Legislature doubtless “did not intend to foster lawlessness” when it enacted the 2004 DLRA. But allowing resentencing for class A-I felony drug offenders who had been returned to prison on parole violations, in the court’s view, would not provide such an incentive.
Numerical Offender Estimate as Evidence of Legislative Intent under the 2004 DLRA
A statute’s legislative history, as evidenced in a legislative bill memorandum, may sometimes be used as an aid in construing the intent of the Legislature as the court did in Bagby. But ascribing an intent to the Legislature primarily through a single statement (or in this case a single number) in a legislative bill memorandum is also an analysis which must be undertaken cautiously.
First, an extrinsic aid to interpretation, like a bill memorandum or the statement of a criminal defense lawyer, may not be resorted to if the language of a statute is clear. (McKinney’s Statutes § 120.) The language of the 2004 DLRA resentencing statute on this point is not in any way ambiguous. The statute clearly does not bar offenders who have been previously released on parole from resentencing eligibility. A legislative bill memorandum prepared by a bill’s sponsor, where the contents of that bill memorandum were not repeated in a floor debate, also cannot serve as a reliable reflection of the views of the legislators who enacted a bill.[6] Such cautions would be significant enough in a case where a bill memorandum clearly stated what the intent of a bill sponsor might be. Here, however, one would have to presume not only that legislators had read the bill memorandum and shared the sponsor’s intent but that they *764 understood that the memorandum’s estimate that the bill would apply to “roughly 400” offenders also meant that offenders previously released on parole were excluded from the statute. There is no evidence the court is aware of, however, that anyone in the Legislature understood the memorandum in this manner.
Even assuming that the bill memorandum and criminal defense lawyer estimates in Bagby could be used as definitive evidence of the Legislature’s intent, in the court’s view, those estimates do not support the proposition that the Legislature intended to exclude parole violators from the statute. The court understands the argument the Bagby court made in this respect as follows. The estimates of 400 or 450 offenders covered by the statute were estimates of the current number of offenders incarcerated for class A-I drug felonies at the time the statute was passed. In the future, however, it could be expected that additional numbers of class A-I felony drug offenders would violate their parole and be reincarcerated, resulting in additional offenders becoming eligible for resentencing. Since the numerical estimate in the bill memorandum was 400, however, and since this estimate did not include additional parolees who might violate their parole in the future, the estimate indicates that the Legislature did not intend to include these future parole violators under the law.
In the court’s view, however, there are a number of flaws in this argument. First, the two memoranda do not indicate what the “roughly 400” or “approximately 450” estimates were based on. Thus, it cannot be concluded that these estimates were based on the number of offenders in custody when the act was passed. The bill memoranda language also does not make clear whether it referred to the total pool of offenders who might be eligible to apply for resentencing or were estimates of how many offenders would actually be resentenced.
Assuming the numbers were estimates of the current offender population in some respect, however, offenders in custody would include both those in custody pursuant to their original sentence and those who had been returned to custody following a parole violation. That is, there is no indication that these estimates were prepared by reviewing the cases of each individual offender in custody when the law was passed and then subtracting those offenders who had been returned to custody after violating their parole from the aggregate number. Indeed, it is not clear that data distinguishing between these two categories of offenders would have even been available to the Legislature *765 in an aggregate form. Thus, at least with respect to parole violators who had been returned to custody prior to the enactment of the 2004 DLRA, these estimates, if they could be seen as evidence of anything, would support the view that the Legislature intended to include offenders who had violated their parole and been returned to prison prior to the law’s effective date in the statute.
The authors of the two memoranda obviously could have simply determined how many class A-I felony drug offenders were currently incarcerated by obtaining that information from the State Department of Correctional Services and then used that number in their memoranda. Both memoranda used rough estimates, however, rather than precise numbers. Indeed the two estimates were materially different. This would support the view that the number of affected offenders might vary over time. It would support the view that the number of offenders might increase (by virtue of parole violations, for example) just as it might decrease (because some convictions might be reversed on appeal).
As noted, supra, the Bagby court opined that drug offenders were a large portion of the parolees supervised in New York and that
“[s]ince the Legislature envisioned that the Rockefeller Drug Law Reform Act would be applicable only to approximately 400 inmates, logic dictates that the Rockefeller Drug Law Reform Act does not apply to parolees who have been incarcerated for a parole violation, since the number of parolees supervised in New York State far exceeds 400” (11 Misc 3d at 888-889).
But the total number of parolees, offenders on parole for drug offenses or even offenders on parole for class A-I felony drug offenses is obviously irrelevant in the analysis. The only possibly relevant number would be the number of offenders on parole for class A-I felony drug offenses whose parole was subsequently revoked. There was no way the Bagby court could have predicted what that number would be. But neither could the Legislature. That is the final point. The fact that the Legislature was obviously unable to predict how many offenders might return to prison for violating their parole in the future and then incorporate such an estimate into their estimate of how many offenders would benefit from resentencing does not mean that the Legislature consciously chose not to include such offenders under the statute. In short, in the court’s view, there is no evi *766 dence that the Legislature intended the result the court reached in Bagby.'[7]
Trial Court Decisions Concerning Whether Mills and Rodriguez Apply to the 2009 DLRA
The court is aware of nine trial court decisions in which courts have considered whether the Mills and Rodriguez resentencing bars were applicable to resentencings under the 2009 DLRA. In five of these decisions, the court held that the Mills or Mills and Rodriguez rules did not apply to the 2009 DLRA. Four decisions have held that Mills or Mills and Rodriguez bar resentencing under the statute.[8] *10The five courts which have held that incarceration following a parole violation does not bar resentencing under the 2009 DLRA rely upon the plain language of the statute. Haulsey and Williams also noted that the language of the 2005 DLRA, with its requirement that an offender be more than three years away from parole eligibility, differs from the language of the 2009 DLRA which only requires that an offender be in custody.
Three of the five trial court decisions which have held that parole violations do not bar resentencing, however, predated the First Department’s decision in Rodriguez. Indeed, in Haulsey and Williams the courts noted that under the 2004 DLRA, which in part contained the same eligibility language as the 2009 DLRA (that an offender simply be in DOCS’ custody), there was *767 no controlling authority (five years after the act’s passage) which held that offenders were barred from resentencing because of a parole violation.
While this was correct at the time these decisions were rendered, it is no longer correct. The Rodriguez decision now holds that an offender once paroled is no longer eligible for resentencing under the 2004 DLRA. The 2009 DLRA, like the 2004 DLRA, requires that an offender be in custody. Therefore, the continued vitality of the precedents in Haulsey and Williams, which based their holdings in part on the similarities between the 2004 and 2009 DLRA is questionable. In the fourth decision in which parole violations were not held to bar resentencing (People v Edmond), although the court’s decision was dated one week after the Rodriguez decision, the court did not reference Rodriguez. It is therefore not clear whether, given the very close gap in time between Rodriguez and Edmond (which included a weekend and a court recess holiday period), the Edmond court considered the Rodriguez decision in reaching its conclusion.
The court’s decisions in Matthews, Banks and Baity, however, which held that parole violators are barred from resentencing under the 2009 DLRA, followed the Rodriguez decision and cited Rodriguez in support of their holdings. In Banks, the court reasoned that since the Rodriguez decision construed language under the 2004 DLRA which was mirrored in the 2009 DLRA, that an offender had to be in the “custody of the department of correctional services” in order to be eligible for resentencing, the Rodriguez rule should be applied to the 2009 DLRA, notwithstanding the fact that the two statutes also contained additional differing eligibility requirements. Baity, in addition, held that the rationales inherent in the court’s decision in Rodriguez were equally applicable under the 2009 DLRA.
The most extensive analysis in a holding that parole violators are not barred by the Mills and Rodriguez rules came in the Rivera decision. The Rivera court did consider and distinguish the First Department’s decision in Rodriguez and made some of the same arguments made by this court here for why Mills and Rodriguez do not bar resentencing under the 2009 DLRA. The court noted that the plain language of the 2009 DLRA did not bar parole violators, that the 2009 DLRA was a different statute than the 2004 and 2005 acts, that the 2009 statute applied to a broader group of offenders than the earlier statutes and that the 2009 act differed from the 2005 statute in that it did not *768 include the earlier statute’s requirement that an offender be more than three years from parole eligibility to qualify for resentencing.
This court agrees with all of those points. But the Rivera court also grounded its holding on an interpretation of the Mills decision which neither this court nor any other tribunal this court is aware of has shared. As was noted, supra, the Mills court based its holding in part on the rationale that defendant Then’s resentencing eligibility had to be calculated only with respect to his initial crime, regardless of whether his second crime brought him into the statute’s eligibility window. As was noted, supra, had that underlying rationale been reflected in the holding of the Mills decision, the case would have had little or no practical effect on whether parole violators were eligible for resentencing under the 2004 and 2009 DLRA. The Mills court then went on to hold, however, that Jose Then had become “ineligible for parole on the 1999 conviction the minute he was, in fact, paroled” and that “[w]e therefore hold that once a defendant has been released to parole supervision for a class A-II drug felony conviction, he or she no longer qualifies for 2005 DLRA relief for that particular conviction.” (Mills, 11 NY3d at 537.)
In Rivera, however, the court concluded that it was this underlying rationale for the decision which was controlling, rather than the literal language of the holding itself:
“The Court of [Appeals] language explaining why Then could not use his incarceration on the new offense to make him eligible for resentencing under DLRA 2 on the earlier sentence has been cited by other courts when holding that defendants who are not being held on new sentences but have been violated on parole because of new criminal conduct are not ineligible for resentencing under DLRA 1 and DLRA 3. [The word ‘ineligible’ in the preceding sentence apparently should have read ‘eligible’.] This court concludes that People v. Then does not compel that result because the Court in that case was simply holding that defendant could not use his concurrent incarcerations under the previous A-II felony sentence and his new crime sentence to bring him within the parole eligibility requirements which determine his eligibility for resentencing on that previous A-II felony sentence.” (2010 NY Slip Op 50425[U] at *3-4.)
This court does not agree with that portion of the Rivera decision. When the Court of Appeals held in Mills that offenders *769 returned to prison after parole violations were ineligible for resentencing under the 2005 DLRA, it meant what it said. In the court’s view, however, the words the Legislature used in enacting the 2009 DLRA are entitled to the same deference.
Why Mills Should Not be Held to Bar Resentencing for Parole Violators under the 2009 DLRA
There are a number of reasons why the Mills and Rodriguez rules, in the view of this court, should not be applied to resentencing motions under the 2009 DLRA. A number of these rationales are based on differences between the 2004, 2005 and 2009 statutes. First, any such rule would be plainly inconsistent with the language of the statute (although this is not an argument that the Rodriguez court found persuasive in construing the 2004 DLRA). The 2009 DLRA provides that
“[a]ny person in the custody of the department of correctional services convicted of a class B felony offense defined in article two hundred twenty of the penal law which was committed prior to January thirteenth, two thousand five, who is serving an indeterminate sentence with a maximum term of more than three years” is eligible for resentencing if they are not subject to a statutory resentencing exclusion. (CPL 440.46 [1].)
There is no dispute that the defendant here meets all of these criteria and is not subject to any of the statute’s exclusions.
Second, after reviewing the available legislative history for the 2009 DLRA, the court is not aware of any evidence that the Legislature consciously intended to exclude offenders who had previously violated their parole from the statute. Thus, even assuming the court in Bagby correctly concluded that the Legislature intended to exclude parole violators from the 2004 DLRA, there is no evidence that the Legislature had any such intent when it enacted the 2009 law.
Third, in the 2009 DLRA the Legislature created a long list of offenders who were statutorily ineligible for resentencing because of current sentences they were serving or their previous criminal histories. This detailed listing creates a strong inference that the Legislature intended those offenders and not others to be barred from the statute:
“It is a universal principle in the interpretation of statutes that expressio unius est exclusio alterius. That is, to say, the specific mention of one person or thing implies the exclusion of other persons or thing. *770 As otherwise expressed, where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted and excluded.
“Thus, where a statute creates provisos or exceptions as to certain matters the inclusion of such provisos or exceptions is generally considered to deny the existence of others not mentioned.” (McKinney’s Statutes § 240, Comment [some emphasis added]; see also East Acupuncture, P.C. v Allstate Ins. Co., 61 AD3d 202 [2d Dept 2009]; Matter of Caspian Realty, Inc. v Zoning Bd. of Appeals of Town of Greenburgh, 68 AD3d 62 [2d Dept 2009].)
The exclusions the Legislature created in the 2009 DLRA distinguish it from the 2004 and 2005 acts. In the 2004 act’s resentencing provision, applicable to class A-I felony drug offenders, all offenders were eligible for resentencing, although resentencing ranges varied depending upon an offender’s criminal history. The 2005 act barred offenders currently serving sentences which made them not eligible for “Merit Time” from the law. This broad, general exclusion, however, only dealt with offenders who had concurrent sentences for violent, sexual and similar crimes. The 2009 act’s exclusions are more broadly and specifically drawn. The statute excludes not only offenders serving certain current sentences but a range of offenders with objectionable prior criminal histories including those previously convicted of a violent or non-merit-time eligible offense. The Legislature understood the 2009 act’s exclusions to be of a different kind and character than had been enacted before. As Senate Codes Committee Chair Eric Schneiderman asserted during debate on the Senate bill:
“I will tell you that the resentencing provision here is even tougher than the resentencing provision in the 2004-2005 reforms. We have a series of exclusions, people who are not able to apply for resentencing who were able to apply under the last round of reforms — which we call the Johnson exclusions— which we’ve added in here. Anyone with a violent felony within 10 years, a myriad of ineligible offenses, including all sex offenses, you’re not eligible to apply.” (NY Senate Debate on Senate Bill S56-B, Apr. 2, 2009, at 2682.)
The phrase “the Johnson exclusions” apparently refers to a fel *771 low Senator and is interesting because it highlights the deliberative process the Senators engaged in when they crafted the exclusion list. Unlike the offenders excluded from the 2005 act, the exclusions created by the 2009 law are not general. Nor were these exclusions casually arrived at. They are a careful itemization of offenders who have committed specific prior crimes within specific time periods. Under the principle of ex-pressio unius est exclusio alteráis, “the inference that omitted particulars were intended to be excluded is stronger in a carefully drafted statute than in one which is loosely drawn.” (McKinney’s Statutes § 240, Comment.)
The inference that the Legislature meant its exclusions under the 2009 DLRA to be exclusive is also more persuasive, in the court’s view, because the exclusions would actually bar many parole violators from the statute. That is, the act includes a bar which is a subset of those who would be barred from resentencing eligibility were the Mills and Rodriguez rules applied. An offender who violates his or her parole by committing a violent or non-merit-time eligible offense within 10 years of a resentencing application or who is still serving a sentence for such a crime at the time resentencing is sought, for example, is excluded from the statute not by virtue of the Mills and Rodriguez rules but because the law provides for such exclusions. (See CPL 440.46 [5].) But the fact that the statute bars offenders who have violated their parole by committing a sexual offense, for example, but would provide a court with the discretion to determine whether or not to grant a resentencing application for an offender who violated his or her parole by missing a parole appointment, in the court’s view, is not illogical or perverse. Legislatively created distinctions like this are surely not so irrational as to justify rewriting the unambiguous language of the statute.
Fourth, the unique eligibility timing requirements of the 2009 DLRA, as contrasted with the earlier acts, mean that, by definition, many offenders who are eligible for resentencing under the statute will be offenders returned to prison after parole violations. This is true for two reasons. First, the 2009 DLRA requires that offenders have committed their crimes prior to January 13, 2005 (and have received an indeterminate sentence with a maximum term of more than three years). (CPL 440.46 [1].) Second, the class B felony drug offenders impacted by the 2009 DLRA are, in the aggregate, serving significantly shorter terms than the class A felony offenders covered by the 2004 and *772 2005 statutes. The fact that offenders can only become eligible for resentencing more than four years after their crimes were committed and that many of these offenders will, in addition, be serving comparatively shorter sentences means that many offenders may become technically eligible for resentencing only after a parole violation. Such an outcome was a foreseeable result of the sentence lengths and timing requirements of the statute. The court is not aware of any legislative history which indicates that the Legislature consciously intended such a result. But, as a matter of statutory construction, the Legislature is presumed to intend the natural and foreseeable results of its enactments. (Matter of Dowling v Gates & Co., 253 NY 108 [1930].)
Fifth, it is obvious that the 2009 DLRA is a “remedial statute” which was created to remedy perceived defects and injustices which were inherent in the sentencing system previously applied to low-level drug offenders. “Generally speaking remedial statutes . . . are liberally construed, to spread their beneficial result as widely as possible.” (McKinney’s Statutes § 321, Comment.)
The plain language of the 2009 DLRA resentencing statute thus does not exclude parole violators. There is no legislative history which suggests that the Legislature intended such a result. The Legislature’s itemization of specific exclusions in the act creates a strong inference that no further exclusions were intended. Moreover the 2009 act differs in this respect from both the 2004 DLRA (which had no exclusions) and the 2005 DLRA (which contained only one general exclusion for offenders serving certain concurrent sentences). The natural consequence of the 2009 DLRA’s unique sentence lengths and timing requirements is that the statute predictably will include parole violators within its eligibility rules. The 2009 DLRA is a remedial statute which must be liberally construed. In light of all of these factors and the significant differences between the 2004, 2005 and 2009 DLRAs, the question is whether the considerations which led the Court of Appeals and the First Department to reach their conclusions in Mills and Rodriguez are so persuasive when applied to the 2009 DLRA that they should be held to bar resentencing under the 2009 statute just as such resentencings were barred under the earlier laws. In the court’s view, the rationales behind the Mills and Rodriguez rules, when applied to the 2009 DLRA, do not support a construction which would bar parole violators from resentencing eligibility.
*773 The “Fostering Lawlessness” Rationale under the 2009 DLRA
The most obvious way in which the plain meaning of the statute would create an irrational result would be because it rewarded offenders for violating parole. As the Bagby court observed, the Legislature surely did not intend to foster lawlessness when it created resentencing opportunities. In the court’s view, however, no such incentives would be created by construing the statute as it was written.
The court noted supra that the 2004 DLRA required that class A-I felony drug offenders serving lifetime indeterminate sentences be granted a termination of their sentence after three years of unrevoked parole and could be granted such termination after two years. That same provision mandated that other drug offenders, including all of those covered by the 2009 DLRA, must be granted a termination of their sentence after two years of unrevoked parole supervision. (See Executive Law § 259-j [3] [a], as added by L 2004, ch 738, § 37.) Such offenders may also have their parole terminated (in the Division of Parole’s discretion) after one year.
The court noted supra that allowing class A-I felony drug offenders to be eligible for resentencing after a parole violation would not create an incentive for such violations or reward offenders for such wrongful conduct. The same logic applies under the 2009 DLRA. In order to believe that allowing resentencing for parole violators would create an incentive to violate parole, one would have to believe that offenders would find it beneficial to engage in the following conduct.
First, commit a parole violation or a new crime the offender would otherwise not commit for the purpose of being returned to prison in the hope that this might reduce his or her future parole term. Initially, this would presume a level of self-sacrifice, discipline, prescience, sentencing law expertise and forward-thinking behavior far beyond the ken of the average person, much less the average drug addict. This hypothetical offender would initially be rewarded with a time assessment in prison for the parole violation (of unknown duration) as well as a possible new jail or prison sentence (if a new crime was committed) of unknown length.
Next, the offender would have to hope that his or her resentencing application would be granted, an outcome which would be plainly impossible to predict. If the application was granted, the offender would have to hope that the offered resentence resulted in a relatively early release rather than one *774 which required significantly more prison time. Assuming every one of these positive contingencies occurred, the offender could eventually hope to be in the same position he was in with respect to his liberty (out of prison) as he was before the violation occurred.
At the time the initial violation was committed, the offender, by definition, would be able to look forward to having his sentence terminated at some point less than two years in the future if his parole was not revoked. Upon being released when resentenced, however, a period of postrelease supervision would be required to be imposed of between one and three years which might well extend beyond his prison release date. (See Penal Law § 70.45.) It is possible that an offender in such a position might eventually see his parole term lessened or eliminated by virtue of being returned to prison. But such a result would be plainly impossible to predict. It would also require an offender in all cases to initially return to prison rather than remain at liberty. Given all of this, it is difficult to understand how, in the real world, authorizing the resentencing of parole violators under the 2009 DLRA would create a practical incentive to violate parole.
Positing that not barring resentencing in all such cases would lead to “illogical if not perverse results” would also ignore the discretion vested in trial judges considering resentencing applications. Resentencing under the 2009 DLRA is obviously not mandatory. Courts may deny resentencing or impose longer or shorter resentencing or postrelease supervision terms based on a variety of factors. (See People v Vasquez, 41 AD3d 111 [1st Dept 2007], lv dismissed 9 NY3d 870 [2007].) Those factors obviously include an offender’s parole violations and what position an offender would be in vis-á-vis his position prior to violating parole.
In practical terms, for most offenders now seeking resentencing under the 2009 DLRA, there is not even a theoretical argument that granting resentencing would encourage bad behavior. That is because the parole violations which have resulted in incarceration for many of these defendants occurred before the 2009 DLRA was enacted. In the instant case, for example, the defendant was returned to prison for a parole violation in August of 2008. Obviously, at the time he committed that violation, he could not possibly have been acting pursuant to an incentive under the provisions of a law which was not even being considered by the Legislature at the time. The instant case *775 also illustrates why it would be impossible for courts in many resentencing applications under the 2009 DLRA to effectively reward offenders for their wrongful behavior in violating parole, even if a court were determined for some reason to do so. The defendant here originally received a minimum sentence of two years. At the time his resentencing application was made, he had already served an additional time assessment for his parole violations of approximately 14 months. Even had this court immediately terminated defendant’s sentence on the date of his motion (which this court did not do), he would still have been required to have served an additional prison term for his parole violations which was more than half again the original minimum sentence he was subjected to.
Barring Resentencing Because Parole Violators are More Culpable than Other Offenders
A second possible rationale for barring such offenders from resentencing consideration might be that parole violators are simply more blameworthy, more dangerous or less deserving of the ameliorative benefits of resentencing than other offenders. Even assuming that such a value judgment was one which the courts, rather than the Legislature, was entitled to make, however, the argument would simply be incorrect in numerous cases.
An offender who is never released from prison may have engaged in much more egregious, dangerous and blameworthy conduct before and after being convicted of a drug crime than one who is granted parole release and then returned to prison after a violation. For example, an offender with an extensive violent history who was repeatedly denied parole release because of multiple violent disciplinary infractions while in prison would not, by virtue of those infractions, be statutorily ineligible for resentencing, although a court reviewing the case of an offender with significant indicia of violence would very likely deny a resentencing application in the exercise of its discretion. However, were the Mills and Rodriguez rules applied to the 2009 DLRA, a first felony offender who had a perfect prison disciplinary record, completed drug treatment, earned a GED, was granted early parole release and then returned to prison for violating his curfew would be permanently barred from resentencing. Results like these would be arrived at moreover, not by applying the provisions of the statute. They would be reached by obviating the statute’s plain meaning.
Defendant’s circumstances in the instant matter provide another good example of the incongruous results which would *776 arise from applying a statutory resentencing bar under the 2009 DLRA to all offenders in prison for a parole violation. Unlike many defendants applying for resentencing under the 2009 DLRA who have significant felony histories, Mr. Figueroa is a first felony offender. He served in the National Guard for eight years. He has successfully completed numerous prison programs. He has no violent felony history. He has an almost perfect prison disciplinary record (having committed one serious disciplinary infraction). At the time his motion was granted he was enrolled in the alcohol and substance abuse treatment program where he was receiving favorable reviews. But he has also committed multiple parole violations. “Substantial justice” does not dictate the denial of defendant’s resentencing motion, but neither should a judicially created categorical resentencing eligibility bar.
Denying Resentencing Because Previously Paroled Offenders were Ineligible for Resentencing in the Past
Application of a resentencing bar might be justified by the fact that, in violating parole, an offender would, at one point in the past, by definition, have been ineligible for resentencing because he was not in prison. But the statute is written in the present tense and measures resentencing eligibility based on whether an offender is in DOCS’ custody when resentencing is applied for, not whether an offender has continuously been in DOCS’ custody throughout his sentence. Thus, in the absence of other considerations, it is difficult to understand why the simple fact that an offender was at some point during his or her sentence not in prison would justify permanently barring that offender from resentencing eligibility.
The Legislature’s Intent in Enacting the 2009 DLRA
All of these potential justifications for a resentencing bar under the 2009 DLRA do not accurately reflect the primary concern of the Legislature in enacting the statute. The Legislature, in writing its resentencing exclusions, was not focused on hypothetical incentives or theoretical equities. They were focused on a related but more specific and practical concern: public safety.
The Legislature’s bipartisan concern for protecting public safety has been evident throughout its drug law reform efforts over the past five years. As this court outlined in its recent decision in Brown (supra), that concern has been manifested in multiple ways. The Legislature has treated offenders with prior violent felony convictions much more harshly than other offend *777 ers. Indeed, as this court noted in Brown, mandatory minimum sentences for drug offenders with a prior violent felony conviction are higher now than they were before the Legislature began its drug law reform efforts in 2004. In the 2005 and 2009 acts, exclusions were extended to certain offenders who were not eligible for “Merit Time,” a category which sweeps beyond violent felons to cover a myriad of offenders whose crimes, although not technically defined as “violent felonies,” have an indicia of violence or are sexual offenses.
The concern for protecting public safety is particularly evident under the 2009 DLRA, both in the statute’s resentencing exclusions and its intent. As Senate Codes Committee Chair Eric Schneiderman noted during the Senate floor debate on the act:
“In the 2004-2005 reforms on which this set of resentencing guidelines are based, a total of a little less than 500 people were resentenced, 476 people were resentenced. A larger number applied for resentencing, but the courts screened out about a third. The people who had the biggest potential to cause problems, to cause harm, were screened out. What was the result of that resentencing provision which we emulate here today for another group of offenders? The total, out of the 476 people resentenced, we had a total of less than 2 percent recidivism.
“This is a staggeringly microscopic recidivism rate. Not one violent crime. Not one violent crime. We had a few people who committed drug crimes, a few people fell off the wagon, we had one DWI, and we had one nonviolent property offense. Out of 476 people, that’s an extraordinary success rate for a group of felons.
“So the resentencing provisions worked last time, they’re going to work this time. They are in this bill. Again, we have all the procedural protections you could want. The prosecutor is free to oppose. Every prosecutor who ever dealt with a defendant who’s eligible for resentencing is notified and has a chance to submit evidence. The courts will do, I believe, as they did in the 2004-2005 reforms and only let out the people who are able to reintegrate into society.” (Senate Debate at 2682-2683.)
The Legislature, in crafting its resentencing exclusions, was thus primarily concerned with protecting the public from of *778 fenders who might commit new crimes, particularly violent crimes. That concern, however, is not consistent with a rule which would create a resentencing bar concerned solely with whether wrongful conduct occurred while an offender was on parole. An offender with numerous prior violent felony convictions which occurred when the offender was not on parole, for example, or an offender who engaged in violent conduct in prison might be one who clearly should not benefit from resentencing. An offender exhibiting no indicia of violence, on the other hand, who violated his or her parole by smoking marijuana and subsequently successfully completed a rigorous drug treatment program in prison might, under the facts and circumstances of a particular case, be deserving of resentencing regardless of his or her parole violation.
Senator Schneiderman’s comments are also instructive, in the court’s view, because they again point out that the Legislature, in enacting the 2009 DLRA, vested discretion in the courts to make appropriate resentencing decisions. Courts are obviously not infallible. But the Legislature, in crafting the 2009 DLRA, wrote a detailed statute which gave courts the discretion to make reasoned judgments and created an adjudicatory process the Legislature deemed fair to both prosecutors and criminal defendants. Given this carefully considered legislative design, it is difficult to understand why the judiciary would impose categorical limitations on its own discretion which the Legislature did not create.[9]
*779 The Practical Impact of a 2009 DLRA Resentencing Bar for Parole Violators
One final difference between the 2004/2005 acts and the 2009 DLRA is the practical impact a 2009 DLRA resentencing bar would have. The impact of the Mills rule on the 2005 act has apparently been minimal. The same will likely be true under the First Department’s decision in Rodriguez for three reasons. First, given that the Rodriguez rule was announced five years after the 2004 DLRA’s enactment, the issue of whether a parole violation should bar a resentencing application under the act may be moot in many cases. Second, because of the very long sentences served by class A-I felony drug offenders, many never had the chance to be released and then violate their parole before applying for resentencing. Finally, the universe of eligible offenders under the 2004 DLRA is limited by the limited number of offenders convicted of class A-I felonies.
Each one of these limiting factors are reversed under the 2009 DLRA. The Mills and Rodriguez rules, as noted supra, are already being applied in numerous cases rather than for the first time five years after initial applications for resentencing were made. Offenders covered by the 2009 DLRA are serving comparatively short sentences. Moreover, as noted supra, the act’s resentencing provisions only apply to offenders whose crimes were committed prior to January 13, 2005. These latter two factors mean that a large number of offenders who are eligible for resentencing under the statute may have violated their parole.
The resentencing exclusions created by the Legislature in the 2009 DLRA and those that would be added to the statute by the Mills and Rodriguez rules are both “exceptions” to the general ameliorative provisions of the law. Exceptions to a statute “must be strictly construed in order that the major policy underlying the legislation itself is not defeated. They [the exceptions] extend only so far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception.” (McKinney’s Statutes § 213, Comment.) Unlike the 2004 and 2005 acts, a parole violation resentencing bar under the 2009 statute would likely eliminate a significant number of offenders from the ameliorative benefits *780 of the statute without regard to the facts and circumstances of any case. The scope of the statute would be dramatically restricted in a manner which there is no evidence that the Legislature ever intended.
For all of these reasons, the court holds that an offender who returns to DOCS’ custody following the violation of an offender’s parole is not, by virtue of this fact, statutorily barred from resentencing consideration under the 2009 DLRA. The court holds that the defendant is thus eligible for resentencing. Discretionary Resentencing Determination
Because the court has determined that the defendant is statutorily eligible for resentencing, a determination must be made as to whether resentencing should be granted in this case. The 2009 DLRA provides that defendants shall be resentenced pursuant to Penal Law §§ 60.04 and 70.70 unless “substantial justice dictates” that resentencing be denied. (CPL 440.46 [3], referencing 2004 DLRA [L 2004, ch 738, § 23] .)[10] In making a determination concerning resentencing, the court may consider “any facts or circumstances” relevant to the imposition of a new sentence which are submitted by the defendant or the People and in addition shall consider a defendant’s institutional confinement record. Such a review shall include a petitioner’s disciplinary history and participation or willingness to participate in correctional treatment or programming. (Id.)
The Legislature did not define what the term “substantial justice dictates” means but a number of parameters of the statute are obvious from its language and legislative history. First, where a defendant is eligible for resentencing, resentencing is not mandatory. Courts rather have a “measure of discretion” in determining whether to grant a resentencing application. (Vasquez, supra.) It is also obvious that the statute is not neutral in guiding courts as to how to exercise that discretion. Rather, “there is a strong presumption in favor of granting a resentencing application for all eligible defendants.” (People v Lopez, 10 Misc 3d 1056[A], 2005 NY Slip Op 51975[U], *2 [Sup Ct, NY County 2005].) The court must be mindful of the ameliorative *781 purposes of the 2009 DRLA’s resentencing provisions. Those provisions were obviously intended to bring the sentences of appropriate eligible offenders sentenced prior to 2005 in line with the lower sentencing parameters in existence for the same crimes today.
There are a number of factors which indicate, in the court’s view, that defendant’s application should be granted. The defendant has only one felony conviction. He has never been convicted of a violent crime. He has a number of positive accomplishments in prison, including completing the shock incarceration program, the Willard drug treatment program, participating in the alcohol and substance abuse treatment program and receiving training in a number of vocational skills. He has received only one disciplinary infraction while incarcerated, although this was a serious tier III infraction involving violent conduct. Defendant, when released, would be able to count on the support of his wife who has urged that his resentencing application be granted.
The People make a number of arguments as to why defendant’s motion should not be granted. They argue that defendant sold hundreds of dollars of narcotics on multiple occasions and that his role in the drug trade was more substantial than that of the lowest participants in illegal drug sales. They argue that defendant’s three separate parole violations indicate that he is unable to conform his behavior to the requirements of the law. They also note that, given defendant’s imminent likely release on parole in any event, he should not benefit from the statute’s ameliorative provisions.[11]
The court believes that all of these considerations (other than defendant’s likely imminent release on parole) are important factors in the analysis. But all of these factors, in combination, in the court’s view, do not indicate that substantial justice dictates the denial of defendant’s motion. Defendant may have been at a level in the unlawful narcotics trade which was one step above that of a crack addict who sells one $10 rock of cocaine. But there is no evidence that he was a high- or even mid-level participant in the illegal drug trade. He was a low-level dealer whose unlawful sales were apparently related to his use of narcotics. Defendant’s parole violations argue against *782 granting resentencing. But, in the court’s view, this factor is outweighed by other considerations: the fact that the defendant (unlike many offenders who apply for resentencing) is a first felony offender, the fact that he has had only one disciplinary infraction, the fact that he has successfully completed a number of important programs while in prison and the fact that his criminal history does not contain any indicia of violence.
The fact that the defendant would receive only a modest benefit by being resentenced, in the court’s view, is not a factor which argues that his motion should be denied. The Legislature obviously established a time after which resentencing would not be available. Where a defendant is eligible for resentencing, however, in the court’s view, the degree of benefit he might receive should not be considered in determining whether or not a resentencing application should be granted, although it certainly would be a relevant factor in determining the length of an offered resentence.
Resentence Calculation
Upon granting an application for resentencing, the court must offer the defendant a sentence within the ranges provided by the appropriate provisions of the Penal Law. Here, the defendant is a first felony drug offender who has been convicted of a class B felony. He is therefore required, upon resentencing, to receive a determinate sentence between one and nine years followed by a period of postrelease supervision of between one year and two years. (Penal Law §§ 60.04, 70.70, 70.45.) As noted supra, the People oppose defendant’s resentencing motion. If the court grants defendant’s motion, the People urge that he be offered a determinate sentence of five years’ incarceration followed by a period of postrelease supervision of two years.
Although the DLRA outlines various factors a court should consider in a resentencing application, it does not explicitly instruct courts on how new sentences should be arrived at, how strongly the original sentencing court’s determination should weigh in the analysis or how prior and current sentencing ranges should be reconciled. As is true with respect to initial sentences imposed under the Penal Law, a great measure of discretion is afforded to the sentencing court.
In this court’s view, a number of principles, in addition to those which would apply in an initial sentencing determination, should apply in DLRA resentencing calculations. This court outlined its assessment of the most relevant factors in detail in its decision in Jones (supra). In arriving at a resentencing *783 number the court, inter alia, should review the sentence a defendant originally received, any parole or disciplinary violations a defendant was subjected to, what programs the defendant completed in prison and what the practical impact of a resentencing number would be given a defendant’s current status. The defendant has already been in custody for approximately 4V2 years.
Considering all of these myriad parameters, the court has determined to offer the defendant a determinate sentence of three years in prison followed by two years of postrelease supervision. Defendant’s period of incarceration would be credited against both his period of incarceration and period of postrelease supervision. If the court’s offered sentence was implemented, the defendant would be released from prison forthwith and placed on postrelease supervision for approximately six months before the completion of his sentence.
Finally, the court would note that in this case the defendant, by violating the provisions of his parole, was required to serve an additional IV2 years in prison which he would not have otherwise been required to serve if he had simply conformed with his parole conditions. He thus did not in any respect benefit from his technical parole violations, even after this court granted his motion. Granting defendant’s motion in this case did not lead to any illogical or perverse result. It rather led to the kind of result which is consistent with the provisions and purposes of the 2009 DLRA.

. The court originally granted defendant’s motion from the bench on January 12, 2009 with an indication that a written opinion, the instant decision and order, would follow.

. This court has issued two recent previous opinions in which it analyzed a number of the resentencing provisions of the 2009 DLRA. (See People v Jones, 25 Misc 3d 1238[A], 2009 NY Slip Op 52483[U] [Sup Ct, NY County, Dec. 10, 2009]; People v Brown, 26 Misc 3d 1204[A], 2010 NY Slip Op 50000[U] [Sup Ct, NY County, Jan. 4, 2010].) Analysis and language from those previous decisions is incorporated in the instant decision and order.

. In addition to the 2009 DLRA, the instant decision also repeatedly refers to the two earlier statutes in which the Legislature authorized resentencing for certain drug offenders. The Drug Law Reform Act of 2004 (the 2004 DLRA) (L 2004, ch 738), inter alia, authorized resentencing for class A-I felony drug offenders. The Drug Law Reform Act of 2005 (the 2005 DLRA) (L 2005, ch 643) authorized resentencing for class A-II felony drug offenders.

. Hardy denied a defendant resentencing under the 2005 DLRA because he had already been released on parole, but the brief opinion does not indicate whether or not the defendant was subsequently incarcerated. In McCloud, the Court denied resentencing under the 2005 DLRA where a defendant had been released to parole supervision and subsequently was reincarcerated for a parole violation. The Court held that “[w]e do not believe that the drug reform laws were intended to apply to offenders who have served their term of imprisonment, been released to parole supervision, violated their parole and, as a result, were subject to a subsequent period of incarceration” (38 AD3d at 1057). The McCloud court did not indicate whether defendant’s parole violation was the result of a new crime or a technical violation. The Hernandez court came to the same conclusion in upholding the denial of a resentencing *757 application under the 2005 DLRA although, again, it is not clear whether the defendant’s parole violations were new crimes or technical violations.

. 2004 DLRA § 37, adding Executive Law § 259-j (3-a).

. “Where the views of a legislative sponsor of a bill were not stated in the course of debate on the floor of the Legislature but in a memorandum submitted to the Governor after passage of the bill, and there was no showing that other legislators were aware of the broad scope apparently intended for the bill by its sponsor, such views as so expressed may not serve as a reliable index to the intention of the legislators who passed the bill.” (McKinney’s Statutes § 125, Comment.)

. One final relevant point about the Bagby decision is that its analysis was made in dicta. As the Bagby court noted, since the defendant’s class A-I felony sentence had been commuted to an indeterminate term of SVs years to life imprisonment, he was “plainly ineligible to be resentenced under that part of the Rockefeller Drug Law Reform Act pertaining to A-I felony offenders” (since he was not subject to a sentence with an indeterminate term of at least 15 years to life imprisonment). (11 Misc 3d at 890.) Thus, the court’s analysis of the Legislature’s intent arose in a case where the offender was ineligible for resentencing under the plain terms of the statute in any event.

. See People v Haulsey, Sup Ct, NY County, Nov. 20, 2009, Allen, J., index No. 5780/99; People v Williams, Sup Ct, NY County, Dec. 23, 2009, Pickholz, J., index Nos. 9280/99, 5364/04; People v Taylor, Sup Ct, Bronx County, Dec. 10, 2009, Villegas, J., index Nos. 5045/00, 5399/00; People v Edmond, Sup Ct, NY County, Jan. 6, 2010, Ward, J., SCI No. 1136/04; People v Rivera, 26 Misc 3d 1236(A), 2010 NY Slip Op 50425(D) (Sup Ct, Bronx County, Feb. 1, 2010, Benitez, J., Nos. 2608, 1977/2000) (all holding that incarceration on a parole violation does not bar resentencing under the 2009 DLRA); see People v Nieves, 26 Misc 3d 1210(A), 2009 NY Slip Op 52703(D) (Sup Ct, Westchester County, Dec. 8, 2009, Molea, J., index No. 00-826s); People v Matthews, 26 Misc 3d 1217(A), 2010 NY Slip Op 50118(D) (Sup Ct, NY County, Jan. 19, 2010, Zweibel, J., index No. 6395-99); People v Banks, Sup Ct, NY County, Jan. 26, 2010, McLaughlin, J., index No. 7170/95; People v Baity, Sup Ct, NY County, Feb. 3, 2010, Obús, J., index No. 2525/98 (all reaching the opposite conclusion).

. It might be argued that the Legislature was happy with the way the 2004 and 2005 statutes were administered in part because those statutes included the Mills resentencing bar. As was noted, supra, however, the Mills bar under the 2005 act, when compared with a rule which simply said that eligibility under the act would have to be judged only with respect to an offender’s instant conviction, probably had a minimal practical impact. Under the 2004 act, there was no controlling authority the court is aware of prior to January 29, 2009 (when the First Department announced its decision in Rodriguez) which held that parole violations were a bar to resentencing. Indeed, until the Rodriguez decision, multiple trial courts were concluding that parole violators were not barred from resentencing under the 2004 DLRA. (See Haulsey, supra; Williams, supra.) Williams in part relied upon an earlier decision by the Appellate Division, First Department (People v Gonzalez, 29 AD3d 400 [1st Dept 2006]) where the Court upheld the trial court’s denial of a resentencing motion for a parole violator. The Gonzalez court held that a resentencing denial was justified as a matter of discretion in that case because “substantial justice” dictated the denial of the defendant’s motion. In relying upon the discretionary “substantial justice” standard however, the Court apparently implicitly assumed that the defendant was statutorily eligible for resentencing (although the Court did not explicitly reach such a holding). The Legislature *779 had no reason to equate what it saw as the favorable results of discretionary resentencings under the 2004 law with a rule which barred such resentencings after a parole violation because at the time the 2009 DLRA was enacted no such rule existed.

. The 2009 DLRA’s standard for determining whether an eligible offender should be resentenced — that such resentencing should be imposed unless “substantial justice dictates” otherwise — is the same standard which was used in the 2004 DLRA. The 2004 standard, in fact, is incorporated by reference in the 2009 DLRA. The legislative history and case law interpreting the phrase “substantial justice dictates” under the 2004 DLRA are thus obviously relevant in interpreting the 2009 statute.

. At the time defendant’s initial motion was granted by this court from the bench (January 12, 2010), the defendant had a parole date scheduled in a couple of weeks which he believed would likely result in his release even in the absence of favorable action on his motion.