OPINION OF THE COURT
John L. DeMarco, J.
Defendant is charged by indictment with four counts of falsifying business records (class E felonies) and four counts of *457 identity theft (three class E felonies, one class A misdemeanor). She seeks the court’s permission to participate in the judicial diversion program that is codified in article 216 of the Criminal Procedure Law. The People oppose, for two reasons: first, they contend that defendant is not statutorily “eligible” to participate, and second, they contend that there is no evidence that alcohol or substance abuse was a contributing factor to defendant’s alleged criminal behavior. The court took oral argument on the matter, and invited written submissions from the parties as well. After having reviewed those submissions and considered the oral arguments made, the court will permit defendant to participate in the program for the reasons that follow.
Statutory Eligibility
“Eligible defendant” is defined in CPL 216.00 (1). The definition found in the statute appears to contemplate two classes of eligible defendants: those charged with certain drug crimes specified in CPL 216.00 (1), and those charged with certain crimes specified in CPL 410.91 (5). The court acknowledges that defendant does not appear to fit into either of these two categories. Thus the People’s argument regarding defendant’s statutory (in)eligibility quite obviously has some weight. But the court chooses to consider the nature and purpose of the entire statute — and the judicial diversion program itself — as well as what appears to be the plain language of CPL 216.00 (1), in determining whether defendant should be permitted to participate.
The court notes that the drug crimes specified in section 216.00 (1) include class B, C and D, as well as E, felonies. The crimes specified in section 410.91 (5) include several class D, as well as E, felonies. The crimes defendant is charged with committing are all class E felonies (with the exception of one misdemeanor). Furthermore, and very important in the court’s view, is the fact that the “eligible” crimes specified in section 410.91 (5) are — on their face — at least as serious, if not more so, than the crimes defendant is charged with committing. Additionally, the crimes specified in section 410.91 (5) are not — on their face — any more likely to have been committed because of drug addiction than the crimes charged here. In short, the court can discern no rational basis for permitting someone charged with burglary or criminal mischief the opportunity to be considered for the program when someone charged with falsifying business records or identity theft is precluded, regardless of his or her therapeutic needs. If anything, the court is of the opinion that *458 defendant’s crimes here are more likely the product of drug addiction than, for example, burglaries typically are.
The court has undertaken a review of Penal Law crimes currently on the books. Even by a conservative estimate, there are over 500 Penal Law offenses, including dozens of class E felonies — many of which might very likely be committed because of drug addiction, such as “absconding from a community treatment program,” “criminal diversion of prescription medications,” and “criminal use of a public benefit card,” among many, many others. And that is just the Penal Law — of course many other felony crimes are littered throughout the statute books. It is inconceivable that the legislature intended to restrict the judicial diversion program to those very few offenders who are fortunate enough to be charged with a particular crime, and not others who are similarly situated — that is, accused of low level, nonviolent criminal behavior and found by well-trained and conscientious professional therapists and clinicians to be in serious need of drug addiction treatment.
The People argue, with some force, that the legislature could have written a statute that simply permits any defendant accused of a nonviolent offense the opportunity for diversion. But the fact that the legislature did not write such a statute does not ineluctably lead to the conclusion that it meant to exclude a vast universe of defendants who would benefit from treatment, and whose participation in the program will result in vast savings of time and money for the criminal justice system of our great state.
The court prefers to take this tack: CPL 216.00 (1) states, in pertinent part, exactly which defendants are “not” eligible— basically repeat and violent offenders. The logical inference to be drawn from this exclusionary language is that courts may use their discretion to permit judicial diversion for certain defendants who fall under the inclusive language of section 216.00 (1) and section 410.91 (5), as well as others who are accused of nonviolent offenses committed, at least in part, because of drug addiction, and for whom drug treatment is a desirable option.
According to the Sponsor’s Memorandum in Support of Legislation, the underlying purpose of the bill that created the judicial diversion program is
“[t]o significantly reduce drug-related crime by addressing substance abuse that often lies at the core of criminal behavior. The bill would accomplish this goal by returning discretion to judges to tailor the *459 penalties of the penal law to the facts and circumstances of each drug offense and authorizing the court to sentence certain non-violent drug offenders to probation and drug treatment rather than mandatory prison where appropriate.” (Sponsor’s Mem in Support of 2009 NY Assembly Bill A6085 at 1, Bill Jacket, L 2009, ch 56; see also People v Jordan, 29 Misc 3d 619, 621-622 [Westchester County Ct 2010].)
The justification offered by the legislature for the creation of the diversion program is compelling:
“To achieve further dramatic success in reducing crime, our state must make a concerted effort to eliminate substance abuse which lies at the core of most criminal behavior. Expanding the number of nonviolent drug offenders that can be court ordered to drug abuse treatment will help break the cycle of drug use and crime and make our streets, homes and communities safer. This will make New York’s criminal justice policies not only tough — but smart.” (Sponsor’s Mem at 5 [emphasis added].)
The legislature did not come idly to this conclusion. As far back as 1993, a public hearing on the matter revealed that “[t]he overwhelming sentiment among the witnesses at the hearing was that the policy of incarceration and punishment of nonviolent drug users had failed . . . .” (Id.) Similar feelings were expressed at extensive public hearings in 2008 (id.). And statistics bore out those feelings: “[According to the 2007 Identified Substance Abusers Report, produced by the Department of Correctional Services, 83% of inmates in state prison had an identified substance abuse need . . . .” (Id.) Additionally, “[n]umerous comprehensive studies indicate that drug abuse treatment is significantly more effective — and cost effective — than incarceration, as a means of reducing crimes committed by drug users” (id.). Now-Chief Judge of the Court of Appeals, the Honorable Jonathan Lippman, testified before the legislature that “graduates of drug court diversion programs operated by the court system commit two-thirds fewer crimes than drug offenders who are simply incarcerated for a period of time” (id.). Furthermore, “the National Institute on Drug Abuse estimates that for every dollar spent on treatment programs, there is a $4 to $7 reduction in the cost of drug related crimes” (id.). Other studies show similar or even greater cost savings and falling crime rates (id. at 5-6).
*460 The Sponsor’s Memorandum concludes:
“Expanding the availability of drug abuse treatment programs would save millions of taxpayer dollars, help many offenders turn their lives around and reduce crime ....
“Thirty-five years of a drug policy focused on punishing drug users and spending billions of dollars on incarceration has failed ....
“The dramatic and comprehensive reforms proposed by this legislation, if fully enacted, would over time significantly reduce the number of New Yorkers abusing and addicted to controlled substances and the incidence of drug-related crimes.” {Id. at 6-7.)
As held by the Court of Appeals, “if two constructions of a criminal statute are plausible, the one more favorable to the defendant should be adopted in accordance with the rule of lenity . . . the core question always remains that of legislative intent” (People v Green, 68 NY2d 151, 153 [1986], quoting People v Jackson, 106 AD2d 93, 96 [2d Dept 1984] [emphasis added]). Here, the statute is susceptible of two competing constructions — one that would permit the defendant to be considered for acceptance into the judicial diversion program, the other that would preclude consideration. The court has considered the legislative intent that bore the fruit that is the statute, and finds that this is not even a close call: the legislative intent in creating the judicial diversion program was to substitute treatment for incarceration when addicted offenders are accused of nonviolent crimes. It is clear from the Sponsor’s Memorandum that the legislature intended to cast a wide net of inclusion, to save both dollars and people. It is simply incomprehensible to this court that the legislature intended to limit the program to a few select offenders (like burglars), when treatment options are clearly preferable for others — like defendant — accused of less serious offenses. Furthermore, it is incomprehensible that the legislature intended to give prosecutors, rather than judges, the final say as to who gets considered for the program and who does not.
The People cite two Fourth Department cases that construed certain crimes in connection with eligibility for parole supervision sentences, contending that these cases stand for the proposition that defendant here is not eligible for the judicial diversion program. The court finds that these cases can be readily distinguished, principally because they held that the defendant *461 did not have either a due process or equal protection, i.e., constitutional, right to a parole supervision sentence. Defendant here does not now argue — nor has she ever — that she has a constitutional right to be considered for judicial diversion. Rather, she seeks the court’s permission, as a discretionary matter, to be considered for diversion. To the extent the People contend that People v Caster (33 Misc 3d 198 [Sup Ct, Monroe County 2011]) controls, this court finds that Supreme Court’s holding is limited to the constitutional (equal protection/ selective prosecution) claim defendant made there, and that any comment about statutory construction by that court must be considered dicta.
It is a well established rule of statutory construction that “remedial statutes . . . are liberally construed, to spread their beneficial result as widely as possible” (People v Figueroa, 27 Misc 3d 751, 772 [Sup Ct, NY County 2010] [internal quotation marks omitted], quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 321, Comment). Accordingly, the court will construe the statute creating the judicial diversion program to encompass defendant’s application.
The court finds that this defendant, charged with the nonviolent offenses of falsifying business records and identity theft (all no greater than class E felonies), is eligible to participate in the judicial diversion program. The court is not issuing a broad ruling that all nonviolent offenses, or all E felonies, are statutorily eligible for diversion. Rather, the court, in its guided discretion, has determined that this defendant is eligible, for the reasons stated above.
Clinical Eligibility
The court has received a completed “Drug Treatment Court: Treatment Plan Recommendation” for defendant. Having reviewed that report, having heard from counsel, and having conducted a hearing on the matter, the court finds that defendant has a lengthy history of substance abuse and dependence, that such abuse and dependence was a contributing factor to her criminal behavior in this case, that her participation in the judicial diversion program could and likely will address her dependence, and that institutional confinement is not necessary for the protection of the public.
Conclusion
Based upon all of the above, the court finds that the defendant will be permitted to participate in the judicial diversion *462 program, subject to a plea or pleas of guilty and compliance with any and all terms of the judicial diversion contract.